IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OLANIYAN MTUNDU ADEFUMI, | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 26-CV-0998 |
| | : | |
| TEMPLE UNIVERSITY POLICE OF | : | |
| PHILADELPHIA, PENN., *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDR, J.                                  APRIL 29, 2026

Currently, before the Court is an Amended Complaint filed by Plaintiff Olaniyan Mtundu Adefumi ("Adefumi") against Temple University Police, Sergeant Ramos and seven unidentified officers following an incident during which Adefumi was allegedly handcuffed by police and placed in the back of a car for a few minutes, (ECF 9 at 23-31). For the reasons set forth, the Amended Complaint is dismissed.

**I.      FACTUAL ALLEGATIONS**

Adefumi's Amended Complaint, like his initial Complaint, is based on his alleged December 12, 2025 encounter with Temple University Police Officers, during which he was briefly placed in the back of a vehicle in handcuffs. (*Compare* Compl. (ECF No. 2) *with* Am. Compl. (ECF No. 9 at 23-31).)[1] Adefumi alleges that at approximately 1:30 p.m., he was stopped by eight officers, who asked for his identification. (ECF No. 9 at 27.) He presented two forms of identification, one of which was his Temple University identification card, but "neither card

---

[1]      Adefumi appears to have filed his Amended Complaint along with copies of the docket for his case and other entries on the docket. (*See* ECF No. 9.) His entire submission was docketed as "Response to Order." (*Id.*) The Amended Complaint appears at the end of the PDF file.

proved to the guards that [he] was the correct owner of the two identification cards." (*Id.*)  When asked, he correctly provided the spelling of his name and his student identification number.  (*Id.*) He was then handcuffed and placed into "a white four-door car."  (*Id.*)  The handcuffs were "extremely tight" and caused him pain.  (*Id.* at 23, 27.)  He alleges that the officers "concluded that [he] took a bag that did not belong to [him], but they never checked [his] bag to see that in it was a record, or records, of [his] legal names."  (*Id.* at 27.)  After he had been in the car for approximately ten minutes, the "head officer told the other officers that [they] stopped a student." (*Id.* at 23.)  Sargeant Ramos then told Adefumi that he could leave.  (*Id.*)  Based on these allegations, Adefumi seeks damages for violation of his civil rights.  (*Id.* at 29.)

## II.     STANDARD OF REVIEW

Since Adefumi is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  This standard requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At the screening stage, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Adefumi is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).

## III.    DISCUSSION

Adefumi's Amended Complaint, like his initial Complaint, is best construed as bringing claims pursuant to 42 U.S.C. § 1983, for violations of his Fourth Amendment rights. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"); *DeLade v. Cargan*, 972 F.3d 207, 211 (3d Cir. 2020) ("[T]he Supreme Court has recognized the Fourth Amendment . . . as the appropriate provision of the Constitution under which to analyze allegations of unlawful arrest and pretrial restraint." (citations omitted)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). The personal involvement of each defendant in the alleged constitutional violation is a required element, so a plaintiff must allege how each defendant was involved in the events giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Further, as previously explained to Adefumi upon screening of his initial Complaint, *Adefumi v. Temple Univ. Police of Phila.*, No. 26-0998, 2026 WL 497796, at *2 (E.D. Pa. Feb. 23, 2026), a plaintiff "cannot assert liability against [an entity such as] Temple University solely on the basis

3

that it employs police officers" who violated his rights but must instead allege that the University's policy or custom was responsible for the underlying constitutional violation to state a claim.[2] *Calloway v. Temple Univ. Coll.*, No. 24-2320, 2024 WL 3653049, at \*5 (E.D. Pa. Aug. 5, 2024); *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) ("To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was.").

To determine whether an investigatory stop was executed within the bounds of the Fourth Amendment, the Supreme Court prescribed a dual inquiry into "whether the officer's action was justified at its inception," in that it was supported by reasonable suspicion, and "whether the manner in which the stop was conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *see United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010). A lawful stop and frisk under *Terry* is a seizure that may elevate into a *de facto* arrest, depending on "the reasonableness of the intrusion." *United States v. Edwards*, 53 F.3d 616, 619-20 (3d Cir. 1995). "[W]hen police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo'" during the course of the stop. *Id.* at 619 (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). This can include handcuffs if justified by the circumstances confronting the officer. *See United States v. Jackson*, 120 F.4th 1210, 1220 (3d Cir. 2024); *Johnson*, 592 F.3d at 448; *Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir. 1995).

---

[2]     Police departments are generally considered subdivisions of an entity that are not suable under § 1983 apart from the entity itself. *Martin v. Red Lion Police Dep't*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (*per curiam*) ("[T]he Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983."). The Court need not decide whether "Temple University Police" is suable separately from Temple University because Adefumi has not stated a claim regardless, both for the reasons discussed below and because he has failed to allege any policy or custom that caused the claimed constitutional violations in this case.

In the Amended Complaint, like his initial Complaint, "Adefumi challenges his handcuffing and brief detention, but he has not provided sufficient facts to state a Fourth Amendment claim." *Adefumi*, 2026 WL 497796, at *3. The Amended Complaint describes a situation in which police stopped Adefumi, apparently because they suspected him of stealing a backpack. Adefumi does not provide any allegations addressing how the police came to have this suspicion, or why it would have been unreasonable for them to have such a suspicion.[3] Instead, the Amended Complaint focuses on the officers' approximately ten-minute-long investigation into the matter. Although unclear, a reasonable reading of the Amended Complaint suggests there may have been confusion because "neither [identification] card" that Adefumi provided "proved to the guards that [he]was the correct owner of the two identification cards." (ECF No. 9 at 27.) In any event, after approximately ten minutes, the officers completed their investigation, confirmed that Adefumi was a student, and permitted him to leave (presumably after concluding that he had not committed any crime). (*See id.* at 23.)

The sparse facts alleged are merely consistent with possible, rather than indicative of, liability because even the most liberal reading of the Amended Complaint does not support an inference that the officer acted unreasonably based on the circumstances confronting them. *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable

---

[3] In the initial Complaint, Adefumi explained that he left his backpack in a university building while running errands and returned to the university to retrieve the backpack. (Compl. at 4.) At some point thereafter, presumably after he retrieved the backpack, he was stopped by police. (*Id.* at 4-5.) He did not include these allegations in his Amended Complaint.

to plausible, their complaint must be dismissed."). Accordingly, Adefumi has not stated a plausible Fourth Amendment claim based on his investigatory detention.

To the extent Adefumi raises an excessive force claim, such a claim is analyzed under the Fourth Amendment "reasonableness" standard. *Graham v*, 490 U.S. at 395. "To determine objective reasonableness, we must balance the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Graham*, 490 U.S. at 396)). The reasonableness of force depends on "the totality of the circumstances," considered from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Johnson v. City of Philadelphia*, 837 F.3d 343 (3d Cir. 2016) (quotations and citation omitted).

In evaluating the use of handcuffs, the Court must "look at the intrusiveness of all aspects of the incident in the aggregate." *Baker v. Monroe Township,* 50 F.3d 1186, 1193 (3d Cir. 1995). In *Kopec v. Tate,* the United States Court of Appeals for the Third Circuit found a basis for excessive force where, despite repeated requests, the officer failed to loosen handcuffs that were so tight the plaintiff began to faint from the pain and lost feeling in his hand, resulting in permanent nerve damage in his right wrist and requiring treatment from a hand surgeon. 361 F.3d 772, 774, 777 (3d Cir. 2004). However, the Court cautioned that the opinion should not be "overread" as it was not meant to open the "floodgates to a torrent of handcuff claims." *Id.* at 777. In contrast to *Kopec*, merely alleging that handcuffs were too tight is generally insufficient to establish excessive force. *See Pagliaccetti v. City of Philadelphia*, No. 09-1106, 2010 WL 3222153, at *5 (E.D. Pa. Aug. 13, 2010) ("Merely alleging that the handcuffs were too tight, as plaintiff has done in this case, does not warrant a finding of excessive force" (citation omitted)). Accordingly, Adefumi's allegation that he was placed in tight handcuffs in the back of a car for a short period of time while

the officers completed their investigation does not plead a plausible excessive force claim. *See Graham-Smith v. Wilkes-Barre Police Dep't*, 739 F. App'x 727, 732 (3d Cir. 2018) (explaining that, although "excessive force is not determined by injury alone," "the unreasonableness of handcuffing requires some indication that it was done unnecessarily or excessively"); *Flamer v. Mitchell*, No. 25-3079, 2025 WL 1758620, at *2 (E.D. Pa. June 24, 2025) (dismissing excessive force claim on statutory screening because plaintiff "failed to allege the circumstances surrounding the incident that indicate whether the force used was objectively reasonable based on the totality of the circumstances").

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Adefumi leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that amendment by a *pro se* litigant would be futile when litigant "already had two chances to tell his story").  An appropriate Order follows, which dismisses this case.


*NITZA I. QUIÑONES ALEJANDRO, J.*